UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIE KNOX, *parent, on behalf of his child,*
*D.K.*, and D.K.,

                                    Plaintiffs,

        -against-

POUGHKEEPSIE CITY SCHOOL DISTRICT,

                                    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___02/02/2022___

No. 17 Civ. 8190 (NSR)
OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge:

    On October 24, 2017, Plaintiffs Willie Knox and his son, D.K., commenced this lawsuit

against Defendant Poughkeepsie City School District under the Individuals with Disabilities

Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.* (ECF No. 1.) Plaintiffs seek reasonable

attorney's fees and costs after they allegedly prevailed on an administrative, due process hearing

before an Impartial Hearing Officer ("IHO"), who found that Defendant had failed to provide

adequate Special Education services to D.K., who was diagnosed with ADHD, during the 2013-

14 school year.[1] (*Id.*) A copy of the summons and complaint were served on November 2, 2017,

to Defendant's Assistant Superintendent for Finance. (ECF No. 6.) After Defendant failed to file

a responsive pleading by November 26, 2017, the Clerk of the Court entered default on January

15, 2019. (ECF No. 15.)

    On March 26, 2019, Plaintiffs moved for default judgment against Defendant by filing their

counsel's declaration in support of default judgment (Wotorson Decl., ECF No. 22), their proposed

---

[1] The IDEA requires participating states to provide disabled children with a free and appropriate public
education ("FAPE") through an Individualized Education Program ("IEP") to be revised at least once a year. *See* 20
U.S.C. §§ 1400(d)(1)(A), 1401(9), 1414(d)(4)(A) (2010). The IDEA also grants parents certain procedural rights,
including the right to an impartial due process hearing regarding their child's placement and services. *See id.* §
1415(f). In New York, an IHO from the local educational agency conducts the initial due process hearing and issues
written findings. *See* N.Y. Educ. Law § 4404(1).

default judgment (ECF No. 23), and statement of damages with accompanying exhibits (Knox Decl., ECF No. 24). On October 16, 2019, the Court issued an Order to Show cause directing Defendant to appear in person on November 15, 2019, to explain why the Court should not grant default judgment against Defendant declaring Plaintiffs the prevailing party and awarding them and their counsel the sum of $80,962.50 in attorney's fees. (ECF No. 25.) A copy of the Order to Show Cause was served on Defendant's Assistant to the Superintendent of School on October 17, 2019. (ECF No. 26.) Defendant subsequently filed its opposition to Plaintiff's motion on November 8, 2019, ("Response in Opposition," ECF No. 30), and Plaintiffs their reply on November 15, 2019, ("Reply," ECF No. 32). For the following reasons, the Court GRANTS Plaintiffs' motion for default judgment and AWARDS Plaintiffs some, although not all, of the requested fees.

## STANDARD

"Where entry of a default judgment is opposed, the standard for granting such a judgment under Rule 55 is governed by the same principles that apply to a motion to set aside entry of a default." *Citadel Management, Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 142 (S.D.N.Y. 2000). Under Federal Rule of Civil Procedure 55, "[t]he court may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c); *see also Grant v. City of New York*, 145 F.R.D. 325, 326 (S.D.N.Y. 1992) ("In accordance with Rule 55(c), the court may set aside an entry of default for good cause shown.") (internal quotation omitted). In determining whether good cause exists to vacate an entry default, courts consider "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). The standard under Rule 55(c) is more lenient than the standard to set aside a default judgment under Rule 60(b). *Id.* at 276.

It is well established that "default judgments are disfavored," and that "[a] clear preference exists for cases to be adjudicated on the merits." *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). Therefore, in deciding a motion to vacate entry of default, "all doubts must be resolved in favor of the party seeking relief . . . ." *New York v. Green*, s, 104 (2d Cir. 2005). On a motion to vacate, "the defaulting party bears the burden of proof." *Time Warner Cable of New York v. Cabada*, No. 97-CV-4172, 1997 WL 797533, at *1 (E.D.N.Y. Dec. 31, 1997).

## DISCUSSION

Defendant argues that the Court should not grant default judgment and instead set aside the entry of default because (1) the default was not willful as it has a reasonable excuse for failing to respond to Plaintiffs' complaint—namely, that service to its Assistant Superintendent for Finance was defective because she was not authorized to accept service of process on its behalf, (Resp. in Opp'n at 8–11); (2) Plaintiffs cannot show that they were prejudiced by its default because they took nearly two years after the IHO's decision to bring the instant action, (*id.* at 11–12); and (3) it has a meritorious defense to the Complaint because it contends Plaintiffs did not prevail on a significant issue before the IHO, (*id.* at 12–15).

But Plaintiffs counter that (1) service was proper and that Defendant has failed to adequately explain its default, (*id.* at 2–4); and (2) they were the prevailing party at the administrative, due process hearing because the IHO concluded that Defendant, even after becoming aware of D.K.'s ADHD, largely ignored professional recommendations to provide him with adequate Special Education services during the 2013-14 school year, (*id.* at 4–9).

## I.    Willfulness

A finding of willfulness is appropriate where "there is evidence of bad faith" or that a defendant's default is the result of "egregious or deliberate conduct." *Holland v. James*, No. 05

Civ. 5346, 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008). In contrast, "[n]egligence or carelessness does not amount to willfulness." *Argus Research Grp., Inc. v. Argus Sec., Inc.*, 204 F. Supp. 2d 529, 531 (E.D.N.Y. 2002); *see also Car-Freshner Co. v. Air Freshners, Inc.,* No. 7:10-CV-1491, 2012 WL 3294948, at *4 (N.D.N.Y. Aug. 10, 2012) ("[W]illfulness within this Circuit does not include careless or negligent errors even when the negligence is gross."). Where a litigant's conduct is egregious, "the court may find a default to have been willful where the conduct . . . was not satisfactorily explained." *Sec. & Exch. Comm'n v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Courts generally "resolve any doubt about [a defendant's] willfulness in [the defendant's] favor." *Raheim v. New York City Health & Hosps. Corp.*, No. 96 Civ. 1045, 2007 WL 2363010, at *3 (E.D.N.Y. Aug. 14, 2007).

Defendant argues that his failure to file a responsive pleading was not willful because service was defective. Specifically, it contends that the copy of the summons and complaint were served to its Assistant Superintendent of Finance, who was not a school officer authorized to accept service of process on its behalf under Rule 311(7) of the New York Civil Practice Law and Rules. (Resp. in Opp'n at 10.)

Rule 4(j)(2) of the Federal Rules of Civil procedure provides that "[s]ervice upon a . . . governmental organization subject to suit shall be effected by delivering a copy of the summons and complaint to the chief executive officer or by serving the complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant." See Fed. R. Civ. P 4(j)(2); *see also* Wright & Miller, Federal Practice and Procedure: Civil 2d § 1109; *see also Johnson v. New York City Bd. of Educ.*, 23 F. App'x 70, 71, 2001 WL 1586692 (2d Cir. 2001).

4

Rule 311 of New York Civil Practice Law and Rules provides, in part, that "[p]ersonal service upon a corporation or governmental subdivision shall be made by delivering the summons . . . upon a school district, to a school officer, as defined in the education law[.]" N.Y. C.P.L.R. § 311(7). In turn, New York's Education Law § 2 provides that "school officer" means

> a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system.

N.Y. Educ. Law § 2(13). New York courts "have consistently required strict compliance with the statutory procedures for the institution of claims against [New York] and its governmental subdivisions, and where the [State] Legislature has designated a particular public officer for the receipt of service of process, [the courts] are without authority to substitute another." *Franz v. Bd. of Educ. of Elwood Union Free Sch. Dist.*, 492 N.Y.S.2d 452, 453 (2d Dep't 1985) (citations omitted).

Here, on the face of the statute, the term "school officer" does not include an "assistant superintendent." While New York state courts have previously found that other positions were not "school officers" for purposes of service of process under Rule 311, they have yet to specifically address whether an "assistant superintendent" is one of them. *See, e.g.*, *Puchalski v. Depew Union Free Sch. Dist.*, 989 N.Y.S.2d 739, 743 (4th Dep't 2014) (payroll clerk); *Baumann & Sons Buses, Inc. v. Ossining Union Free Sch. Dist.*, 995 N.Y.S.2d 212, 216 (2d Dep't 2014) (security guard); *Franz v. Bd. of Educ. of Elwood Union Free Sch. Dist.*, 492 N.Y.S.2d 452, 453 (2d Dep't 1985) (secretary); *Kornit v. Plainview-Old Bethpage Cent. Sch. Dist.*, 417 N.Y.S.2d 15, 16 (2d Dep't 1979), *aff'd*, 49 N.Y.2d 842 (N.Y. 1980) (school district's attorney).

However, courts within this District have found that an "assistant superintendent" is a "school officer" for purposes of filing notices of claims against the governing body of any school district under Education Law § 3813(1). *See, e.g.*, *Bertuzzi v. Copiague Union Free Sch. Dist.*, No. CV174256SJFAKT, 2020 WL 5899949, at *21 (E.D.N.Y. Mar. 9, 2020), *report and recommendation adopted as modified*, No. 17CV4256SJFAKT, 2020 WL 3989493 (E.D.N.Y. July 15, 2020) ("Applying these principles to the instant case, Plaintiff's NYSHRL claims against the District, the Board, Superintendent Bannon, *Assistant Superintendent* Andrews, and Foreign Language Coordinator Budion are subject to the one-year statute of limitations, since these individuals are considered 'officers.'" (emphasis added)); *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 162–63 (E.D.N.Y. 2018) ("Based upon this definition, Lutz, McSweeney [an Assistant Superintendent for Human Resources], Diamond, Anderson and Bilka all qualify as [school officers.' While none of these Defendants are trustees, treasurers, collectors, clerks, or district superintendents, they are all 'elective or appointive officer[s]' who are responsible for the 'administration of affairs' at BOCES. All of these district-wide positions 'relate to the administration of affairs' within BOCES."); *Guity v. Uniondale Union Free Sch. Dist.*, No. CV155693SJFAKT, 2017 WL 9485647, at *10 (E.D.N.Y. Feb. 23, 2017), *report and recommendation adopted,* No. 15CV5693SJFAKT, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017) ("Applying these principles to the instant case, Plaintiff's NYSHRL claims against the District, the Board, Dr. Lloyd (District Superintendent) and Dickson (District *Assistant Superintendent* of Human Resources) are subject to the one year statute of limitations, since these individuals are considered 'officers'[] within the meaning of New York Education Law § 3813." (emphasis added)). Indeed, "although not dispositive, [a finding that] an individual holds a district-wide office . . . militates in favor of a determination that the individual is a 'school officer.'" *Bertuzzi* ,

2020 WL 5899949, at *22 n. 9; *see also Guity*, 2017 WL 9485647, at *10 n.6 (same) ; *compare Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 367 (W.D.N.Y. 2010) (recognizing that "although a principal is the administrative head of a particular school, such position is not a district-wide office.") *with Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 312 (E.D.N.Y. 2014) (finding that the position of "Mathematics Chairperson," a district-wide office, fell within the definition of "school officer").

Considering that both Rule 311(7) and Education Law § 3813(1) have similar purposes—namely, to provide notice to a school district of claims asserted against it, these courts' reasoning and rulings seem equally applicable to the issue at hand here. *Compare Fashion Page, Ltd. v. Zurich Ins. Co*., 50 N.Y.2d 265, 271 (N.Y. 1980) ("The purpose of CPLR 311 . . . is to give the corporation notice of the commencement of the suit . . . ."); *with Parochial Bus Sys., Inc. v. Bd. of Educ. of New York*, 60 N.Y.2d 539, 547 (N.Y. 1983) ("[T]he purpose of section 3813 of the Education Law is to give a school district prompt notice of claims 'so that investigation may be made before it is too late for investigation to be efficient.'" (quoting *Matter of Bd. of Educ.* [*Wager Constr. Corp.*], 37 N.Y.2d 283, 289 (N.Y. 1975)). Therefore, the Court concludes that because the summons and complaint were served on Defendant's Assistant Superintendent of Finance, a "school officer" under Education Law § 2 (13), service of process was not defective here.

Nonetheless, the Court concludes that Defendant's failure to file a timely response to the Complaint was not willful. "As noted above, doubts concerning whether default judgment is warranted should be resolved in favor of the non-moving party." *Westvaco Corp. v. Viva Magnetics Ltd.*, No. 00 Civ. 9399 (LTS)(KNF), 2002 WL 1683454, at *2 (S.D.N.Y. July 24, 2002) (citations omitted). Notably, Defendant relied on the Commissioner of Education's decision in *Application of Max Eagelfeld for Removal of Sarah Tate as Assistant Superintendent of Schools*

*for the Mamaroneck Union Free School* District, Decision No. 13,696 (Oct. 25, 1996), which explicitly held that "[a]ssistant and associate superintendents are not officers but are instead employees of a public school district."[2] Thus, Defendant "has proffered a reasonable explanation for its delay in defending the action, specifically, that it believed that service had not been properly effected and that it was not, therefore, required to respond to the Complaint." *Id.*

## II.    Prejudice to Plaintiffs

"Delay alone does not establish prejudice." *Arista Recs., Inc. v. Musemeci*, No. 03CV4465(DGT)(RML), 2007 WL 3124545, at *4 (E.D.N.Y. Sept. 18, 2007), *report and recommendation adopted*, No. CIV.A. CV-03-4465(DG, 2007 WL 3145861 (E.D.N.Y. Oct. 25, 2007) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)). To establish prejudice, plaintiffs must demonstrate "that the delay will result in the loss of evidence, create increased difficulties for discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983).

Here, Plaintiffs raise no claim of prejudice resulting from the delay. Nor does the record support a finding of the same because, as Defendants aver, Plaintiffs waited until two years after they allegedly prevailed at the hearing with the IHO before commencing the instant action. (Resp. in Opp'n at 11–12.)

## III.    Meritorious Defense

Finally, "a defendant must [also] present more than conclusory denials when attempting to show the existence of a meritorious defense." *Arista*, 2007 WL 3124545, at *4 (citing *Enron Oil*

---

[2] To be clear, nothing in this opinion should be construed to overrule the cited Commissioner of Education's decision. Instead, the Court merely declines to defer to the Commissioner's interpretation of the statute because the issue here involves the interpretation of state statutes and pure questions of law for which "no deference is accorded [to] the agency's determination." *Madison-Oneida Bd. of Co-op. Educ. Servs. v. Mills*, 4 N.Y.3d 51, 59 (2004) (declining to defer to the Commissioner of Education's determination that teaching assistants were included within the meaning of the word 'teachers' as it appeared in Education Law § 3013).

*Corp.*, 10 F.3d at 98). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp*, 10 F.3d at 98 (citations omitted). To set aside an entry of default, the movant must "support its general denials with some underlying facts." *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320–21 (2d Cir. 1986). This requires a "low threshold of adequacy," *Curry v. Penn Credit Corp.*, No. 15-CV-6360, 2015 WL 6674922, at *5 (W.D.N.Y. Nov. 2, 2015) (quoting *Meehan*, 652 F.2d at 277), but "a defendant must present more than conclusory denials," *Pecarsky*, 249 F.3d at 173.

Defendant contends that it has a meritorious defense to Plaintiffs' Complaint because a review of the IHO decision and the Complaint show that Plaintiffs fail to establish they prevailed on a significant issue in the litigation. Specifically, Defendant avers that

> [a]ccording to the IHO Decision, the majority of Plaintiffs' Complaint was to recover compensatory education for the alleged denial of a Free Appropriate Public Education . . . for the 2013-2014 and 2014-2015 school years. While they also sought additional relief for eight individual claims, Plaintiffs were successful on only one claim - reimbursement of the cost of an [Independent Educational Evaluation ("IEE")] in the amount of $3,500.00. On every other claim, Plaintiff achieved nothing.

(Resp. in Opp'n at 13.) Defendants also aver that, "[e]ven when assuming reimbursement for an IEE is sufficient to make Plaintiffs [the] prevailing parties, there should be a substantial reduction in the amount of fees" requested. (*Id.*) But Plaintiffs point out that the IHO decision makes clear that "[t]he entire focus of [their] case was to establish that DK suffered from attention deficit disorder, and that [Defendant failed] to offer him education that was consonant with his disability." (Reply at 7.) After due consideration, the Court concludes that Defendant has failed to sufficiently establish a meritorious defense.

The IDEA permits a court to "award reasonable attorneys' fees" to a "prevailing party" "[i]n any action or proceeding brought under" the statute. 20 U.S.C. § 1415(i)(3)(B). "In the context of the IDEA, 'proceeding' refers to, or at least includes, an administrative proceeding." *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 75 (2d Cir. 2005) (citing 20 U.S.C. § 1415(i)(3)(D)(i)).

To qualify as a prevailing party in an IDEA case, "a litigant must demonstrate that: (1) He obtained relief on a significant claim in the litigation; (2) such relief effected a material alteration in his legal relationship with the defendant; and (3) the alteration is not merely technical or *de minimis* in nature." *Kathleen H. v. Mass. Dep't. of Educ.*, 154 F.3d 8, 14 (1st Cir. 1998) (citing *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 791–93 (1989)); *see also Christopher P. v. Marcus*, 915 F.2d 794, 804 (2d Cir. 1990); *D.H. v. Ashford Bd. of Educ.*, 1 F. Supp. 2d 154, 159 (D. Conn. 1998).  In deciding whether a party is a prevailing party, "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 604 (2001). In other words, the parties seeking attorney's fees must "receive at least some relief on the merits of [their] claim before [they] can be said to prevail." *Garland Indep. Sch. Dist.*, 489 U.S. at 792. While plaintiffs do not have to prevail on every issue to be considered a prevailing party, there must be "a causal connection between the litigation and the relief from the defendant." *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 81 (2d Cir. 1999) (quoting *Wheeler v. Towanda Area Sch. Dist.*, 950 F.2d 128, 131 (3d Cir. 1991)).

Here, a review of the IHO decision indicates that Plaintiffs prevailed in at least one of their claims on the merits. Specifically, the IHO concluded that D.K.'s IEPs for the 2013-14 calendar

year "were not appropriate." (Compl. at 39, ECF No. 1.) Moreover, the IHO found for Plaintiffs in their claim for a $3,500 reimbursement for the IEE because Defendant failed to follow its own policy in initiating a hearing "without unnecessary delay" to prove that its denial of the reimbursement claim was proper. (*Id.* at 39-40.)

Notwithstanding, Defendant claims that "the degree of Plaintiffs' success was, at best, *de minimis*" because they failed to recover anything from their claims on the merits, and instead, were only granted their reimbursement claim due to a procedural waiver. (Reply at 13.) But Defendant's argument is misplaced because it misapprehends the significance of the IHO's rulings on the merits.

Central to the IHO's rulings here is the issue of whether Defendant provided D.K. with a "free appropriate public education" (a "FAPE") as intended under the IDEA. The IDEA seeks to ensure that states provide a FAPE to all eligible children with disabilities. 20 U.S.C. § 1412(a)(1)(A). "A FAPE, as the Act defines it, includes both 'special education' and 'related services,'" which refer to the individually tailored classroom instruction and non-academic support services that the child receives at school. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (quoting 20 U.S.C. § 1401(9)); *see also K.C. ex rel. Her Parents v. Nazareth Area Sch. Dist.*, 806 F.Supp.2d 806, 813 (E.D. Pa. 2011) (citing *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007) (citing 20 U.S.C. § 1401(29))) ("A FAPE is 'an educational instruction 'specially designed . . . to meet the unique needs of a child with a disability,' coupled with any additional 'related services' that are required to assist a child with a disability to benefit from [that instruction].'").

A child with a disability receives this tailored instruction and support through an IEP, which must include (1) a statement of the child's academic achievement and functional

performance, (2) the child's academic and functional goals, (3) how the child's disability affects their progress towards achieving those goals, (4) how the child's progress will be measured, and (5) the services that will be provided to help the child succeed at school. *See Douglas Cnty. Sch. Dist.*, 137 S. Ct. at 994 (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(I)–(III)). As such, the IEP is "the centerpiece of the [IDEA's] education delivery system for disabled children." *Id.* (citation omitted).

"In determining whether a State has deprived children of [FAPE] mandated by [the] IDEA, courts examine whether the State has complied with [the] IDEA's procedural and substantive requirements." *Kalliope R. ex rel. Irene D. v. New York State Dep't of Educ.*, 827 F. Supp. 2d 130, 140 (E.D.N.Y. 2010) (citing *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003)). Accordingly, in determining whether the State has deprived children with disabilities of a FAPE, courts examine the adequacy of an IEP under the IDEA's procedural and substantive requirements.

Relevant here is the substantive inquiry, where the Court asks whether the IEP(s) "'developed through the Act's procedures [are] reasonably calculated to enable the child to receive educational benefits.'" *Grim*, 346 F.3d at 381 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206–07 (1982)). The State is not required to "furnish 'every special service necessary to maximize each handicapped child's potential.'" *Cerra v. Pawling Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005) (quoting *Rowley*, 458 U.S. at 207). A child's IEP, however, must be "'likely to produce progress, not regression'" and must "afford[ ] the student with an opportunity greater than mere 'trivial advancement.'" *Id.* (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir. 1998)). In short: "[a]n IDEA-compliant IEP will provide 'significant learning' and confer a 'meaningful benefit.'" *Nazareth Area Sch. Dist.*, 806 F. Supp. 2d at 813.

Here, the IHO found that the IEPs for the 2013-14 calendar year "were not appropriate and not reasonably calculated to enable the student to receive educational benefit." (Compl. at 27.) Specifically, the IHO found that despite Defendant's awareness of D.K.'s particular educational needs, such as "the need for a more structured learning environment," Defendant

> chose not to make any significant change in [D.K.'s] educational environment but merely recommended Resource Room services for one period daily, tracking sheets for attendance, classroom seating largely at [D.K.'s] option . . ., additional time for completion of assignments, flexible scheduling and timing of testing, flexible setting and on-task focus prompts.

(*Id.* at 29.) Hence, in finding that these IEPs were inadequate, the IHO also implicitly found that Defendant deprived D.K. of a FAPE mandated by the IDEA for the 2013-14 calendar year.

To be sure, the IHO also explicitly concluded "that no compensatory remedy [was] appropriate" because (a) the subsequent IEPs for the 2014-15 school year were appropriate; (b) D.K. had started the 2015-16 school year based upon annual review recommendations for his education; and (c) D.K.'s numerous absences from his classes made it "impossible to determine what adverse effect the 10-week inappropriate [2013-14] IEPs had" in his overall education. (*Id.*) But such finding does not alter the Court's conclusion.

Although courts may not award damages for violations of the IDEA, *Polera v. Bd. of Educ.*, 288 F.3d 478, 486 (2d Cir. 2002), they may award retrospective and/or prospective equitable relief, including reimbursement of paid expenses or compensatory education. *See Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 659 (2d Cir. 2020). Compensatory education is "'prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education." *Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008). "In other words, compensatory education aims to make up

13

for educational services the child should have received in the first place." *E. Lyme Bd. of Educ.*, 962 F.3d at 659.

Thus, that the IHO concluded no compensatory relief was appropriate does not mean Plaintiffs were any less successful in establishing that Defendant deprived D.K. of a FAPE. Such conclusion merely suggests that the IHO found that Defendant's subsequent IEPs for the 2014-15 school year essentially "ma[d]e up for educational services [D.K.] should have received" during the 2013-14 school year. *Id.* Therefore, because Plaintiffs were the prevailing party before the IHO, the Court concludes that Defendant failed to establish a meritorious defense.

As a result, because default judgment is appropriate here, "the only question remaining is whether Plaintiff[s] provide[] adequate support for the relief [they] seek[]." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). Plaintiffs need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159. In other words, the only issue left for the Court to determine is whether the attorney's fees and costs Plaintiffs seek as a prevailing party under the IDEA are reasonable.

Accordingly, given that Plaintiffs have filed detailed declarations in support of default judgment, a proposed default judgment, and supporting evidence (*see* ECF Nos. 22–24), the Court finds that there is a basis on which to determine whether the attorney's fees and costs specified in their proposed default judgment are reasonable, and thus, that a hearing is unnecessary.[3] *See Action S.A. v. Marc Rich and Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1989) ("Rule 55(b)(2) of the Federal Rules of Civil Procedure gives the court discretion to determine whether to hold an evidentiary

---

[3] The Court further notes that it was recently notified that Plaintiffs' counsel, Mr. Ambrose Wotorson, passed away on December 1, 2021. When considering counsel's unfortunate passing together with Plaintiffs' detailed declarations and supporting evidence already available on the record, the Court is of the view that holding a hearing in this case would be unnecessary and fail to provide any significant benefit to a record sufficiently ripe for an entry of default judgment.

hearing or to rely on affidavits to determine damages. . . . Th[e] rule allows but does not require the district judge to conduct a hearing." (citing *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment."))).

## IV.    Calculation of Attorney's Fees under the IDEA

The fees that the Court awards must be "reasonable" and "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(B)-(C). After determining a reasonable hourly rate, the Court multiples that rate by "the number of hours reasonably expended on the litigation," *i.e.*, the "lodestar method." *A.R.*, 407 F.3d at 79 (quoting *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)). "[T]here is . . . a strong presumption that the lodestar figure represents a reasonable fee." *Id.* (alteration in original) (quoting *G.M.*, 173 F.3d at 84).

The fee applicant bears the burden of establishing the hours expended and hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The applicant must present "satisfactory evidence [of the hourly rates]—in addition to the attorney's owns affidavits." *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989) (internal quotation omitted).

### A.    Reasonable Hourly Rate

Plaintiffs seek a total of $80,962.50 in attorney's fees from an hourly rate of $425. (Wotorson Decl. ¶ 27; Knox Decl. ¶¶ 52–53.) Although their counsel only charged them at the low hourly rate of $100, for which total fees amounted to $19,050, Plaintiffs seek attorney's fees for an hourly rate of $425 so that their counsel "may be compensated, appropriately, for the time . . . that he spent obtaining an extraordinary result for me and my son in the underlying civil rights matter." (Knox Decl. ¶ 52.) But Defendant opposes such award because (1) the issues before the

IHO were not novel or difficult; (2) the award and results obtained were *de minimis*' and (3) by Plaintiffs' counsel own admission, he "does not have comparable experience in the area of special education service." (Resp. in Opp'n at 14.) Defendant also argues that Plaintiffs' counsel failed to properly document the time he worked. (*Id.*) But above all, Defendant contends that as Plaintiffs were "successful on only one claim and the failing claims are unrelated and severable," the Court must only award fees for the time spent on the successful claim. (*Id.* at 14–15.)

The fee applicant bears the burden of establishing the hours expended and hourly rates. *Hensley*, 461 U.S. at 437. The applicant must present "satisfactory evidence [of the hourly rates]—in addition to the attorney's own affidavits." *Chambless*, 885 F.2d at 1059 (internal quotation omitted). In determining a reasonable fee, the Court "must ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Id.* at 1058–59 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). "The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d Cir. 2021) (quoting *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019)). The Court also considers the *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 186–87 (2d Cir. 2008) (citing *Johnson*, 488 F.2d at 717–19). "A district

court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." *A.G. v. N.Y.C. Dep't of Educ.*, No. 20-cv-7577 (LJL), 2021 WL 4896227, at \*4 (S.D.N.Y. Oct. 19, 2021) (quoting *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17-cv-7632 (PAE), 2018 WL 3769972, at \*4 (S.D.N.Y. Aug. 9, 2018)).

"The 'community' to which the IDEA's fee calculation provision refers is typically measured by the geographic area in which 'the action was commenced and litigated.'" *A.R.*, 407 F.3d at 79 (quoting *Arbor Hill*, 369 F.3d at 94). Where the legal dispute has been pursued through an action in federal court, "[n]ormally a district court, awarding attorney's fees under [a fee-shifting statute], will consider the prevailing rates in the district in which the court sits." *Id.* (quoting *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)) (alterations in *A.R.*). "The contacts between the administrative proceedings and the Southern District, which is the place . . . where the facts giving rise to [D.K.'s] successful claims occurred, and where the lawyers who represented [him] hang their shingles, appear clearly to predominate," *id.* at 81, and the Court therefore looks to the prevailing rates for special education attorneys in this District.

While "the rates awarded in [ ] IDEA cases . . . are low compared to the rates awarded to attorneys in other civil rights cases," *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 430 (S.D.N.Y. 2012), "the law does not support the contention that attorneys handling IDEA cases should be compensated at a lower rate than that which they normally command in other cases," *id.* at 431 (quoting *Mr. X v. N.Y. State Educ. Dep't*, 20 F. Supp. 2d 561, 564 (S.D.N.Y. 1998)). Fees "should be based on prevailing market rates, and current rates, rather than historical rates." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (cleaned up). This is especially true where fee-shifting statutes like the IDEA are concerned because "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may

17

create disparity between compensation available under [a fee shifting statute] and compensation available in the marketplace . . . [which] undermines [the statute's] central purpose of attracting competent counsel to public interest litigation." *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005); *see also G.B.*, 894 F. Supp. 2d at 430–33 (collecting cases on prevailing market rates over time for IDEA cases in this District).

Courts in this District generally have awarded between $300 and $475 per hour to senior or experienced attorneys in IDEA cases, landing on the higher end of the range based on greater experience and complexity of the matter. *See, e.g.*, *S.P. on behalf of M.P. v. New York City Dep't of Educ.*, No. 20-CV-8380 (ALC)(SN), 2022 WL 109266, at *6 (S.D.N.Y. Jan. 11, 2022) (awarding $400 per hour to attorney with twelve years in special education law and handled over fifty special education matters, and $420 per hour to attorney who was Director of Litigation for Advocates for Children with over twenty years of experience in special education law); *O.R. v. New York City Dep't of Educ.*, 340 F. Supp. 3d 357, 365–66 (S.D.N.Y. 2018) (awarding $350 per hour to attorney with six years of experience in special education law); *C.D.*, 2018 WL 3769972 at *6 (awarding $400 per hour for an attorney with more than 10 years of experience in special education law).

Here, while Plaintiff's counsel had over thirty years of experience as a litigator, with vast experience in civil rights, employment, and Section 1983 cases, (Wotorson Decl. ¶¶ 2–11), Defendant is correct that Plaintiff's counsel "[did] not have comparable experience in the area of special education services," (Resp. in Opp'n at 14). Defendant is also correct that a review of the IHO decision reveals that the issues at the hearing were neither novel nor difficult, (*id.*); nor do Plaintiffs appear to represent that the issues were as such. Accordingly, based on "an assessment of the facts of this case," *S.P.*, 2022 WL 109266, at *6, the prevailing rates for special education

attorneys in this District with comparable experience, Plaintiffs' counsel's qualifications and relevant experience, the expertise and labor required for D.K.'s hearing, and the successful outcome of the hearing, the Court considers an hourly rate of $375 appropriate.

      B.    <u>Number of Hours Expended</u>

Based on their requested total fees and hourly rate, Plaintiffs appear to claim that their counsel expended 190.5 hours in their case. (Knox Decl. ¶ 52.) In support, they submit a summary the bills their counsel gave them. (*See* Knox Decl., Ex. 2.) But Defendant contends that the number of hours expended must be reduced because Plaintiffs' counsel "has also failed to properly document his time" as "[t]he records he provided are not contemporaneous time records and . . . they are based on a summary of texts and bills, [which] are vague, confusing[,] and lacking in appropriate detail." (Resp. in Opp'n at 14.) Additionally, Defendant contends that Plaintiffs are entitled only to fees for those hours expended for their sole successful claim, not for the other unsuccessful ones "unless [both types of] claims are inextricably intertwined and involve a common core of facts or are based upon related legal theories." (*Id.* at 15.)

"In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). "Attorneys applying for court-ordered compensation must document the application with time records [which] should specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F.Supp.2d 470, 477 (S.D.N.Y. 2009) (quoting *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983)) (internal quotation marks omitted). "General descriptions of completed work are sufficient." *Wong v. Hunda Glass Corp.*, No. 09–cv–4402, 2010 WL 3452417, at *4 (S.D.N.Y. Sept. 1, 2010). "The critical inquiry

is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Cesario v. BNI Constr., Inc.*, No. 07–cv–8545, 2008 WL 5210209, at *7 (S.D.N.Y. Dec. 15, 2008) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

A court has discretion to make across-the-board percentage reductions to exclude unreasonable hours. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997). A court may make such reductions when attorneys engage in less skilled work, like filing and other administrative tasks. *See Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, No. 09–cv–975, 2010 WL 3911261, at *5 (S.D.N.Y. Sept. 1, 2010). Additionally, a court should reduce the award where the requested fee is excessive because the stated number of hours is greater than that which should have been required for the work produced. *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002).

Here, Plaintiffs' own submission containing the summary of their counsel's bills only account for a total of 146.8 hours expended, not 190.5. (*See* Knox Decl., Ex. 2.) Further, from those hours, 25.3 hours were merely for traveling from New York City to Poughkeepsie and back. As courts in this Circuit generally reimburse attorneys for travel time at fifty percent of their normal hourly rate, *see Mr. X*, 20 F.vSupp.v2d at 564; *G.B.*, 894 F. Supp. 2d at 439, the Court will do such adjustment here. Hence, at this point, the Court's calculation involves 121.6 expended hours for work at an hourly rate of $375, and the 25.3 hours expended for travel at the adjusted hourly rate of $ 187.50, which results in the total amount of $50,315.63.

Regarding whether Plaintiffs' successful and unsuccessful claims here are inextricably intertwined, the Court concludes that Plaintiffs' claims contesting the adequacy of the IEPs for the 2013-14 and 2014-15 school years do in fact involve "a common core of facts or are based upon related legal theories." Indeed, not only did Plaintiffs advanced similar evidence and legal theories,

but the IHO himself effectively concluded that the adequate IEPs for the 2014-15 school year "ma[d]e up for educational services [D.K.] should have received", *E. Lyme Bd. of Educ.*, 962 F.3d at 659, from the inadequate IEPs for the 2013-14 school year. (Compl. at 39.) However, the Court also notes that the time entries from Plaintiffs' counsel are vague with respect as to which tasks performed were related to Plaintiffs' other unsuccessful claims.

In view thereof, to fairly allocate attorney's fees only for those claims that were successful, the Court will apply a twenty-five percent reduction of Plaintiffs' total fees. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172–73 (2d Cir. 1998) (affirming 20% fee reduction because time entries were vague and inconsistent); *Ritchie v. Gano*, 756 F. Supp. 2d 581, 583–84 (S.D.N.Y. 2010) (applying 15% reduction where counsel billed unreasonable number of hours and submitted vague entries); *Wong v. Hunda Glass Corp.*, No. 09–cv–4402, 2010 WL 3452417, at *4 (S.D.N.Y. Sept. 1, 2010) (applying 15% reduction where counsel performed unnecessary work and where "an experienced attorney [w]ould not have required as much time"); *Wilson v. Nomura Securities Intern. Inc.*, 2002 WL 1560614, at *4 (S.D.N.Y. July 15, 2002) (applying 50% across-the-board reduction for "inefficiencies and excessive billing"). After applying the twenty-five percent adjustment to the previous amount of $50,315.63, the new total amount for attorney's fees is $37,736.72.

And finally, the Court notes that Plaintiffs also seem to only seek reimbursement for their counsel's hotel fees (but not other costs), which amount to a total of $301.00. (*See* Knox Decl., Ex. 2 at 26 (noting that Plaintiffs' counsel spent $107.00, $97.00, and $97.00 in hotel fees for separate days.) Defendant do not object to such award. Accordingly, Plaintiffs are entitled to the total amount of $38,037.72 in attorney's fees and costs.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Default Judgment, and AWARDS Plaintiffs, as the prevailing party under the IDEA, attorney's fees in the amount of $37,736.72, and costs in the amount of $301.00.

The Court further DIRECTS counsel for Defendant to serve a copy of this Order on Plaintiffs and Mr. Ambrose Wotorson's estate or next of kin, and file proof of service on ECF.

The Court finally DIRECTS the Clerk of the Court to terminate the instant action.


Dated:  February 2, 2022
      White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge